# In the United States Court of Federal Claims

No. 23-28C
(Filed: May 17, 2023)
(Re-filed: May 19, 2023)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| PERCIPIENT.AI, INC.,<br><br>            *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>            *Defendant*,<br><br>and<br><br>CACI, INC. – FEDERAL,<br><br>            *Intervenor*. | Bid protest; post-award bid protest; motions to dismiss for lack of subject matter jurisdiction; Tucker Act; Federal Acquisition Streamlining Act; task order bar. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Samuel C. Kaplan,* Washington, DC, for plaintiff, Percipient.ai, with whom were *Hamish P.M. Hume*, *Eric J. Maurer*, and *Gina A. Rossman*, of counsel.

*Reta E. Bezak*, Senior Trial Counsel, United States Department of Justice, Commercial Litigation Branch, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Corinne A. Niosi*, Assistant Director, for defendant. *Graham Day*, National Geospatial-Intelligence Agency, of counsel.

*Anne B. Perry*, Washington, DC, for intervenor, CACI, Inc. – Federal, with whom was *Jonathan S. Aronie* and *Ariel E. Debin*, of counsel.

---

[1] This opinion was originally issued under seal, and the parties were given an opportunity to propose redactions of any protected material. The parties agreed that none were necessary, so it appears in full.

OPINION

This is a post-award bid protest of the National Geospatial-Intelligence Agency's alleged violation of 10 U.S.C. § 3453, a statute that requires agencies to procure commercial or non-developmental products "to the maximum extent practicable." Both the United States and the intervenor, CACI, Inc. – Federal, move to dismiss the protest for lack of subject-matter jurisdiction. For the reasons below, we grant the motions to dismiss.

BACKGROUND[2]

The National Geospatial-Intelligence Agency (NGA) obtains and analyzes images and other geospatial information to provide the federal government with intelligence data. Supplying this kind of intelligence on a global scale is a burdensome analytical task and cannot be done effectively without the help of advanced computer technology. One of those advanced technologies is computer vision, a form of artificial intelligence that "trains and uses computers to interpret the visual world." Compl. ¶ 55. With computer vision, users can more efficiently compile and analyze geospatial intelligence.

Hoping to benefit from this technology, NGA, more than three years ago, issued the SAFFIRE solicitation—which was for an indefinite delivery, indefinite quantity contract containing two parts. The first was a data repository, which would store and disseminate geospatial intelligence "across various large organizations." Compl. ¶ 60. The second, which is at the heart of this dispute, would integrate a computer vision system to enhance the agency's ability to produce, review, and classify intelligence from "millions" of images. Compl. ¶ 58.

The plaintiff, Percipient, is a technology company that developed a computer vision software called "Mirage." Mirage is an open architecture software that works alongside other computer systems and can detect

---

[2] When a party moves to dismiss for lack of subject matter jurisdiction, the court assumes that the undisputed facts in the complaint are true and draws reasonable inferences in the plaintiff's favor. *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016). These undisputed facts are drawn from the complaint, the attached materials, and the administrative record.

equipment, vehicles, and faces—each of which is a critical aspect of geospatial intelligence. More than that, though, Mirage's tools also allow users to narrow the computer's focus to specific objects, patterns, or geographical areas, and it can even learn to anticipate its users' needs over time. Despite these features and capabilities, Percipient did not bid on the SAFFIRE contract because its software could only fulfill SAFFIRE's computer vision requirements. For that reason, Percipient relied on what it viewed as the agency's statutory obligation to consider incorporating commercial products and hoped to be part of NGA's SAFFIRE efforts.

In January 2021, NGA simultaneously awarded the SAFFIRE contract to CACI and issued Task Order 1, which directed CACI, among other things, to "develop and deliver the Computer Vision (CV) suite of systems." AR 3030. The agency then informed Percipient that, if it wanted to participate in SAFFIRE, it needed to speak with CACI. This eventually led to a meeting between Percipient and CACI in March 2021. At this meeting, CACI expressed significant interest in partnering with Percipient on future projects, but explained that, as for working together on SAFFIRE, "that ship" had already "sailed." Compl. ¶ 93.

Alarmed by this revelation, Percipient asked NGA if it would independently evaluate Mirage as a possible commercial solution for SAFFIRE's computer vision system. NGA responded several weeks later and reassured Percipient of its commitment to using commercial products. NGA further explained that CACI's "ship has sailed" statement was an "unfortunate miscommunication," which did not reflect the agency's position. Compl. ¶ 100. Instead, the agency had not yet decided whether it needed to incorporate a commercial product because CACI was still reviewing NGA's legacy systems. NGA confirmed that commercial products would be evaluated once CACI finished.

Another two months went by before Percipient finally secured a meeting with CACI to demonstrate Mirage, although CACI's Program Manager—the individual largely responsible for deciding whether to incorporate a commercial product—left the meeting after only 20 minutes. Still, Mirage received positive feedback, and CACI promised to evaluate Mirage more fully. This "deep dive" into Mirage never happened, however. Compl. ¶ 108.

Several months later, Percipient learned at the 2021 GEOINT Symposium that CACI would be developing a computer vision system for SAFFIRE when CACI employees visited Percipient's symposium booth. Surprised by the news, and no longer believing that CACI could fairly evaluate Mirage, Percipient met with NGA and asked to set up a demonstration. NGA agreed but requested that Percipient "ease up on the legal pressure." Compl. ¶ 118. Percipient then demonstrated Mirage's abilities to several NGA representatives in December 2021, at the end of which NGA concluded that Percipient's software met "all of NGA's analytical transformation requirements." Compl. ¶ 120.

Over the next several months, the parties worked to reach an agreement that would allow NGA to test Mirage with live data, something that Percipient agreed to do at no cost. Just before signing an agreement to that effect, however, NGA changed its tune. Citing legal and security complexities, NGA would no longer use live data and would instead use previously released and publicly available images. Percipient pushed back, claiming that these images would not allow NGA to test Mirage's geospatial module or some of its unique features, such as its ability to alert changes over time. After significant delay, NGA relented and allowed the use of live data.

NGA completed its testing of Mirage in October 2022. Based on the results, Percipient suspected that NGA was not assessing Mirage as a possible commercial solution for SAFFIRE's computer vision requirements because, among other reasons, Percipient could only identify four NGA searches over the 12-week testing period. Thus, Percipient offered to extend the testing period, again at no cost, so NGA could more fully evaluate Mirage as a computer vision system. Percipient's suspicions appeared to be confirmed, though, when NGA explained one month later that it had evaluated Mirage as "an enterprise Machine Learning Platform," and not "as an Analytical tool." Compl. ¶ 137.

After Percipient's efforts to be incorporated into SAFFIRE proved unfruitful, it filed this protest. In its complaint, Percipient alleges that the agency violated its statutory and regulatory obligations by wastefully pursuing a development solution when a possible commercial solution existed. It also alleges that the agency unlawfully delegated inherent government authority when it allowed its contractor, CACI, to determine agency policy on commercial technology. Finally, Percipient believes that

4

the agency arbitrarily handled the SAFFIRE project. In response, the government and CACI have moved to dismiss for lack of subject matter jurisdiction, arguing that Percipient's protest is barred by the Federal Acquisition Streamlining Act's (FASA) task order bar.

## DISCUSSION

Like all federal courts, we possess limited jurisdiction, with ours being defined mainly by the Tucker Act. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Under the Tucker Act, we have jurisdiction over bid protests that allege a "violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

Even if a protest falls within the Tucker Act's jurisdictional grant, it may still be barred by FASA. Through FASA, Congress effectively eliminate[d] all judicial review for protests made in connection with a procurement designated as a task order." *22nd Cent. Techs., Inc. v. United States*, 57 F.4th 993, 999 (Fed. Cir. 2023). In particular, FASA excludes from our jurisdiction any protest "in connection with the issuance or proposed issuance of a task or delivery order." 10 U.S.C. § 3406(f)(1). An agency's challenged action is "in connection with the issuance" of a task order if there is a direct and causal relationship between the two. *SRA Int'l v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014).

Here, Percipient's protest is directly and causally related to the agency's issuance of Task Order 1. Specifically, Percipient alleges that—*after* the agency issued Task Order 1, which directed CACI to develop and deliver a computer vision system—the agency violated §3453 because it failed to consider whether Percipient's product could meet those same requirements. That challenge is barred by FASA.

First, it is unclear whether §3453 requires an agency to consider commercial products after it issues a task order—an issue we need not decide. But even if it does, that task order would be the "direct and immediate cause" of the agency's statutory obligation to consider those commercial products. *See Mission Essential Pers. v. United States*, 104 Fed. Cl. 170, 178 (2012) (holding that FASA barred a protest because an agency's challenged action was the "direct and immediate cause" of the issued task order). In other

words, without the task order, the work that Percipient is challenging would not be taking place and Percipient could not allege this §3453 violation. Second, the agency's alleged procurement decision not to consider commercial products is not "logically distinct" from its decision to procure that same computer system through a task order. *See 22nd Cent. Techs., Inc. v. United States*, 157 Fed. Cl. 152, 157 (2021) (holding that FASA applies unless a procurement decision is "logically distinct" from the issuance of a task order). Instead, that decision would be in direct response to the task order that the agency had already issued.

In short, the protest cannot be abstracted away from CACI's performance under a task order. And certainly, if Percipient prevailed on the merits, any meaningful relief would require this court to partially suspend or discontinue performance under that task order, which further evidences the connection between the challenge and the task order. *See SRA*, 766 F.3d at 1414 (explaining that a protestor's requested relief can support the application of FASA's task order bar). We hold that Percipient's protest is "in connection with the issuance" of a task order and is therefore barred by FASA from being brought in this court.

## CONCLUSION

In sum, we lack subject matter jurisdiction over Percipient's protest. Its challenge to the agency's actions under §3453 is "in connection with the issuance of a task order" and is barred by FASA. Thus, the motions to dismiss for lack of subject matter jurisdiction are granted. The Clerk of Court is directed to enter judgment accordingly. No costs.

s/Eric G. Bruggink  
ERIC G. BRUGGINK  
Senior Judge